590 So.2d 89 (1991)
STATE of Louisiana
v.
Oscar VALENZUELA.
No. 90-KA-1454.
Court of Appeal of Louisiana, Fourth Circuit.
October 15, 1991.
Rehearing Denied November 13, 1991.
Writ Denied February 28, 1992.
*91 Harry F. Connick, Dist. Atty., Martin Melton, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
Michael F. Barry, New Orleans, for defendant-appellant Oscar Valenzuela.
Before KLEES, BYRNES and PLOTKIN, JJ.
KLEES, Judge.
Defendant Oscar Valenzuela was charged by bill of information on February 6, 1989 with attempted possession of cocaine, a violation of LSA-R.S. 14:27, R.S. 40:967. He was tried by a six member jury on August 24, 1989 and found guilty as charged. Defendant was sentenced to two years at hard labor, suspended, eighteen months active probation with special conditions that he pay $500.00 to the judicial expense fund plus court costs. This appeal follows.
In late December of 1988 New Orleans police officers received a tip from a confidential informant that Hector Lopera was selling cocaine out of his residence at 4146 Cleveland Street, New Orleans, and that a shipment of cocaine was due to arrive at the residence at a specific time in a vehicle from Florida occupied by two Cuban males. Sgt. Warren Keller and other officers of the New Orleans Police Department placed Lopera's residence under surveillance on December 29, 1988.
At approximately 1:30 a.m. on December 30, 1988, a truck with a Florida license plate occupied by two latin males arrived in front of the residence. The two males carried several large duffel bags into the residence. At approximately 10:30 a.m., Lopera, carrying a large brown paper bag, and a companion named Jose Carvajal left the residence in the Florida truck and began driving lake-bound on Cleveland Street. The officers attempted a moving surveillance of the vehicle in case part of the contraband was being moved. When Lopera and Carvajal discovered the surveillance and attempted to flee, the officers took them into custody to determine if they were in possession of contraband. A third individual, apparently waiting for Lopera and Carvajal, saw the stop and fled.
The brown bag Lopera was carrying was found to contain $54,000.00 cash. U.S. Customs investigators had by this time joined NOPD officers in the investigation. When they brought a Customs dog to Lopera's vehicle, the dog immediately "hit" upon the paper bag.
Sgt. Keller informed Lopera and Carvajal that they were under arrest and under investigation for possession of narcotics; advised them of their Miranda rights; and informed Lopera that the officers were obtaining a search warrant for his residence. Keller testified that when he asked Lopera if he understood his rights, Lopera shook his head and said "yes." Keller then asked Lopera for permission to search his residence and for his house keys. Lopera handed Keller his set of keys and pointed out the key to his residence.
Keller then returned to the residence where he met several Narcotic officers, including Det. Pedro Marina. The officers entered the house with the key and found Guillermo Panaloza inside. Panaloza agreed to cooperate. The officers conducted a preliminary search to determine if any other persons were in the house, then the Narcotics officers waited there while Sgt. Keller left to apply for a search warrant.
*92 While the officers were waiting for Keller to return with the warrant, the telephone rang. The officers, two of whom spoke Spanish as their native language, allowed Panaloza to answer, but activated the speaker on the phone to make sure that the call was not related to their activities or to any rescue attempt by confederates of the suspects. The caller asked for the "old man" in Spanish. At that point one of the Spanish-speaking officers, Pedro Marina, took the telephone and said the "old man" was not there but that he was conducting business in his absence. The caller identified himself as "Pedro" and said he wanted two ounces of cocaine and that he would send someone over to pick it up. A few minutes later, defendant Oscar Valenzuela arrived and was admitted into the residence by officers Marina and Lajarza. When appellant said he was there to pick up the two ounces of cocaine, Marina asked for money. Appellant said he knew nothing about money and asked to use the phone to call "Pedro." Officer Marina spoke to "Pedro" and reiterated his insistence on money prior to delivery. Appellant left and returned a few minutes later, entered and asked where the cocaine was. Marina asked for the money, and appellant handed him $1,000.00. Appellant was arrested for attempted possession of cocaine. Officer Lajarza was present for both exchanges between Marina and appellant, which were conducted entirely in Spanish.
At trial, Detectives Marina and Lajarza testified as to the events involving appellant, and another officer testified as to the background of the unrelated case in order to explain the presence of the police in the house.
Defendant testified that he had merely been running an errand for "Pedro" and thought he was to pick up two pornographic video tapes from the "old man" and return them to "Pedro." Defendant explained his return to the Lopera residence as follows:
When I went back to Pedro's home, Pedro told me, you know what, I owe that man money and he gave me some money and I put it in my front pocket in the trousers and I went to the house of the gentleman. When I went out to the carwhen I went out of the car Pedro [Marina] opened the door and said what do you want. I said I'm coming to see the gentleman of the house for these things and for the change of the license.
Defendant has assigned eleven specifications of error.

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NO. 1
Appellant contends that the evidence should have been suppressed because the evidence is the fruit of the initial arrest and detention of Lopera, both of which were warrantless and unlawful.
Under Louisiana law, the police may stop a person whom they "reasonably believe is committing, has committed, or is about to commit an offense." LSA-C.Cr.P. art. 215.1(A). "Reasonable suspicion" is less than the probable cause required for an arrest. State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990).
Defendant claims that Lopera was taken into custody on less than probable cause in violation of the Fourth Amendment and the Louisiana Constitution, Article I, § 15. Defendant claims that when the officers arrested Lopera, they knew only that an unproven informant alleged that Lopera would receive drugs from Florida and that two individuals arrived in a truck with Florida plates and entered the residence with two large duffle bags. Defendant complains that there was nothing to show the bags contained contraband rather than clothing and personal gear.
The information provided by the confidential informant, corroboration of this information through police surveillance, and the fact that Lopera left in the vehicle which had arrived the previous night with Florida plates (and according to the informant, arrived with a large amount of cocaine) provided the reasonable suspicion which justified the stop. The fact that the U.S. Customs dog subsequently "hit" upon the bag held by Lopera, in conjunction with *93 the other information, we conclude established probable cause for arrest.
A search conducted pursuant to a voluntary consent is constitutionally permissible, though the prosecution bears the burden of proving that consent was voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
Defendant argues that the State failed to carry its burden of showing by clear and convincing evidence that Lopera freely and voluntarily consented to the warrantless search of his residence. Defendant claims that Lopera speaks Spanish but his rights were read to him in English; and that when Lopera asked if he understood his rights, he responded with a negative gesture (shaking his head) although he said "yes." Defendant also appears to argue that Keller obtained the key through a false representation that he was presently obtaining a search warrant, in contravention of Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and while Lopera was illegally detained. Defendant also argues that Lopera produced the key to his residence in response to Keller's question of whether he had his house keys with him, not whether he agreed to a search.
Sgt. Keller's testimony that Lopera shook his head and answered "yes" when asked if he understood his rights does not indicate that the gesture was negative rather than affirmative. Viewing the evidence in the light most favorable to the prosecution, the record indicates that Lopera consented to the search when he handed his keys to Sgt. Keller and pointed out the key to his residence after having been advised of his rights.
In State v. Gaines, 508 So.2d 131 (La. App. 4th Cir.1987), this court found that the police officer's testimony was sufficient to support the trial court's determination that the defendant gave the police consent to search his residence. The officer testified at the suppression hearing that defendant had surrendered a key to his residence to the police, stating that the key was given on the condition that his girlfriend (who lived in the same residence) not be implicated in any crime. The defendant testified that his house key was taken by the officer when the officer searched him, and that he confirmed to the officer that the key was his house key but claimed that he did not give the officer permission to use the key to search the house. This court noted:
The voluntariness of the defendant's consent to search is a question of fact to be determined by the trial judge according to the facts and circumstances of each case. Furthermore, factual determinations as to the credibility of witnesses are to be accorded great weight on appeal. 508 So.2d at 132.
In the instant case, as in Gaines, the trial judge observed the demeanor of the witnesses and evaluated their credibility. His decision to accept the police officers' testimony on the issue of the voluntariness of Lopera's consent to search his residence was a proper factual determination we find the trial judge did not err or abuse his discretion in denying defendant's motion to suppress the evidence on this basis.
Defendant further argues that Det. Marina's acquisition of the contents of the conversation between Pedro and Panaloza (who originally answered the phone) which led to Marina's conversations with Pedro and meetings with defendant, was unlawful as a violation of the Federal Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and of Louisiana's counterpart, R.S. 15:1301 et seq. because Marina did not obtain the consent of at least one party to the conversation to activate the speaker mechanism. Relying on Silverthorne v. U.S., 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) and Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), defendant argues that Marina's unlawful interception of the contents of the Panaloza-Pedro conversation taints the entire case against him as "fruit of the poisoned tree."
LSA-R.S. 15:1303 provides in relevant part:

*94 (A) Except as otherwise specifically provided in this Chapter, it shall be unlawful for any person to:
(1) Willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire or oral communication ...
"Intercept" is defined as "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." R.S. 15:1302(6). R.S. 15:1302(4) defines "electronic, mechanical, or other device or means" as
"... any device or apparatus which can be used to intercept a wire or oral communication other than:
(a) Any telephone or telegraph instrument, equipment, or facility, or any component thereof, either:
(i) Furnished to the subscriber or user by a communications common carrier in the ordinary course of its business ...
Thus, the activation of the speaker on Lopera's telephone does not constitute "interception" of wire or oral communication because the speaker is not considered an "electronic, mechanical, or other device or means" for the purposes of R.S. 15:1301 et seq.
This assignment of error is without merit.

Assignment of Error No. 2
Defendant argues that the trial court improperly curtailed his cross-examination of a State witness regarding regional pronunciation differences among Spanish-speaking peoples.
Defendant maintained that he arrived at Lopera's residence to pick up two pornographic tapes and referred to them as "two things" in Spanish, "dos cosas." Det. Marina repeatedly testified that defendant specifically asked for two ounces of cocaine. This testimony was corroborated by that of Det. Lajarza. When asked what precise words defendant used, Marina stated he did not recall, but knew that defendant used the words "pick up" and "two ounces of cocaine," and that the Spanish words used by defendant were "dos onzas de cocaina." Marina insisted that defendant used these precise terms and not ambiguous slang and that he (Marina), as part of his investigatory technique, made sure to use the word cocaine so that everyone present understood what they were talking about. Marina admitted that he may have used slang at some other point as well as the word "cocaina." However, Marina did not recall what slang words he used, but he did not think that defendant, who is Honduran, would use the same slang as Marina's Cuban slang. The following colloquy then took place:
DEFENSE COUNSEL:
Now, between the different nationalities and regions in Latin America, it's not only the question of usage such as slang words, as well as idioms, but there are also pronunciation differences, aren't there?
MARINA:
I can't think of any. I mean, Spanish is Spanish no matter where you go. Only some slang words, of course, are going to be different, but that's the only difference that I encounter.
DEFENSE COUNSEL:
Well, isn't it true, that Colombians tend to speak more pure Castilian?
The State then objected to relevancy, which objection was sustained.
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, the Code of Evidence, or other legislation. Evidence which is not relevant is not admissible. La.C.E. art. 402. "Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LA.C.E. art. 401.
There is no indication that this cross-examination regarding regional differences in pronunciation would have even a slight tendency to make the existence of any fact (e.g., whether appellant asked for "dos cosas" or "dos onzas de cocaina") more probable or less probable. Any arguable probative value was clearly outweighed by the *95 risk that its admission would consume too much time and unnecessarily confuse the jury. See State v. Ludwig, 423 So.2d 1073 (La.1982).[1]
As appellant admits, his defense hinged on the jury's assessment of his credibility against that of the police officers. The jury clearly found the testimony of Dets. Marina and Lajarza more credible than that of appellant. The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. State v. Jones, 537 So.2d 1244 (La.App. 4th Cir. 1989).
This assignment is without merit.

Assignment of Error No. 3
Defendant also assigns as error the trial judge's refusal to allow him to cross-examine Det. Marina as to his difficulty in remembering precise events.
When asked on cross-examination what defendant said when he returned to the residence, Det. Marina testified: "My recollection is, he said the same thing, I'm here to pick up the two ounces of cocaine ...". Defense counsel asked: "Didn't you just testify ... on direct ... that when Mr. Valenzuela came back the second time, he walked in and said where's the cocaine?" The following exchange then took place:
MARINA:
Yes, he asked me where's the cocaine. I'm not giving you specific words, I don't recall the specific words, this was over a year ago.
DEFENSE COUNSEL:
Well, specific words are exactly what we need here, so that's why I'm asking you specific words. I mean, what have you given us that are not specific words here?
MARINA:
I'm giving you specific words, but I can't tell you at what point it took place. He did come back the second time and he did ask where the cocaine was, he did ask me that. And I did ask him where's the money. And he did hand me the money and I did take the money and I did place him under arrest for attempted possession of the two ounces of cocaine.
DEFENSE COUNSEL:
These events happened six months ago?
MARINA:
December, this is the eighth month. So about eight months ago.
DEFENSE COUNSEL:
So you can't remember exactly, you've had a little bit of memory loss ...
At this point the State objected, stating that the witness clearly testified to what the defendant said and to what the gist of the conversation was, and complained that the defense statement that the witness suffered memory loss is completely inaccurate. The trial court sustained the objection.
To attack the credibility of a witness, a party may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony. La.C.E. art. 607(C). Comment (h) to C.E. art. 607 states that Paragraph C is necessarily subject to the balance recognized by Article 403, and is not intended to restrict the discretion of the court to exclude marginally probative lines of questioning when they become redundant or unduly time-consuming, or are offset by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The comment further provides:
The words "truthfulness or accuracy" are designed to reflect the two primary methods of attack on credibility. Methods of attack on truthfulness include questioning of the witness concerning prior inconsistent statements and bias, interest, or corruption. Attacks on accuracy may be by means of examination concerning the witness' capacity, perception, or other factors affecting the determination *96 of whether his testimony accords with reality.
It appears that defense counsel's line of "questioning" was more in the line of argument and actually an attempt to describe Marina's testimony to the jury. The jury was clearly able to assess any discrepancy. This line of questioning was marginally probative at best and was becoming redundant and unduly time-consuming.
As previously noted, Marina unequivocally testified that defendant used the words "pick up" and "cocaine" both on his initial visit to the Lopera residence and upon his return. Whether defendant said on his return "I'm here to pick up two ounces of cocaine," or "where's the cocaine," is of no real consequence.
Defendant has failed to show that the court's ruling constituted error or that any such error does not constitute a substantial violation of defendant's rights.
This assignment of error is without merit.

Assignment of Error No. 4
Defendant argues that his objection to Sgt. Keller's testimony regarding the underlying investigation of the Lopera residence should have been sustained on the basis of relevance and prejudicial effect.
Defendant argues that this testimony is irrelevant and without "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (C.E. art. 401) because none of these events had any tendency to make defendant's specific intent to possess cocaine more or less probable. Defendant further argues that even if this testimony is relevant it should have been excluded under C.E. art. 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.
Sgt. Keller's testimony was clearly both relevant and material, particularly in light of defendant's motion to suppress the evidence. The testimony provided the underlying facts to explain the presence of the police in Lopera's residence and the officer's concern for their own safety, as well as their belief that cocaine might be sold from the house.
Sgt. Keller's testimony was neither inflammatory nor overly prejudicial. The officer succinctly testified as to the confidential informant, surveillance, initial stop of Lopera and the facts necessitating securing the residence while a warrant was being obtained. He made no attempt to connect defendant to the underlying investigation or to the drug activity in the residence and in fact testified that he had no involvement with the arrest of defendant.
This assignment of error is without merit.

Assignment of Error No. 5
The State asked defendant on cross-examination, "[I]s it true that you just happened by sheer coincidence to meet both Pedro Zelaya and Hector Lopera?" to which he replied, "Yes, indeed." The prosecutor later remarked during cross: "Sheer coincidence that you meet two major drug traffickers in New Orleans in late 1988." Defendant objected and moved for a mistrial. The trial court denied the motion, sustained the objection and admonished the jury to "disregard that question."
Defendant argues that this comment alludes to inflammatory alleged facts not in evidence and the trial court's failure to grant a mistrial on this basis constitutes reversible error.
Defendant relies upon La.C.Cr.P. art. 770, which provides in relevant part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury; [or]
(2) Another crime committed or alleged to have been committed by the *97 defendant as to which evidence is not admissible ..."
In other situations where prejudicial remarks are made before the jury, the trial judge may use his discretion to admonish the jury to disregard the remark rather than grant a mistrial. La.C.Cr.P. art. 771. Since a mistrial is such a drastic remedy, unless mandated by article 770, it should only be used in those situations which might result in substantial prejudice to the defendant. State v. Burdgess, 434 So.2d 1062 (La.1983).
The remark on that it was "sheer coincidence that [defendant met] two major drug traffickers in New Orleans in late 1988," clearly does not constitute an improper remark as to race or national origin. There is no indication that the State attempted to pursue a race or national origin issue. Further, the remark does not clearly refer, directly or indirectly, to another crime committed or alleged to have been committed by defendant. Because none of the grounds listed in C.Cr.P. art. 770 were present, the trial judge was not required to grant a mistrial.
Finally, the defendant failed to show the remark resulted in substantial prejudice so that it was clearly within the trial judge's discretion to admonish the jury to disregard the remark rather than grant a mistrial. La.C.Cr.P. art. 771.
This assignment of error is without merit.

Assignment of Error No. 6
Defendant argues that the trial court erred in denying special written charges Nos. 1, 2, 10 and 13; and character evidence.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.

a. Requested Charges Nos. 1 and 2
The trial court denied defendant's requested special charges numbers one and two, regarding reasonable doubt and burden of proof, because they were already included in the general charge.
The portion of the general charge relating to reasonable doubt and burden of proof was as follows:
The burden is upon the State to establish to your satisfaction and beyond a reasonable doubt the guilt of the Defendant as to the crime charged. And considering the evidence you must give the defendant the benefit of every reasonable doubt arising out of the evidence or lack of evidence in the case. If you are not convinced of the guilt of the Defendant beyond a reasonable doubt you must find him not guilty. While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is that doubt based on reason and common sense and is present when after you have carefully considered all of the evidence you cannot say you are firmly convinced to (sic) the truth of the charge.
Defendant argues that the term "firmly convinced" falls short of the standard emphasized in Cage v. Louisiana, 498 U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), and resulted in a watered-down concept of reasonable doubt. The instruction in Cage equated "reasonable doubt" with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty.
The instant charge contains none of the objectionable language found in Cage. The charge is the same as that found approved in State v. Taylor, 533 So.2d 94 (La.App. 4th Cir.1988). In that case, however, the trial court used the words "actual or substantial doubt" and "serious doubt" in addition to "firmly convinced."
This assignment of error is without merit.

b. Requested Charges Nos. 10 and 13
Defendant contends that the trial court erred in refusing to give the following jury instruction as to mere presence:

*98 Mere presence in an area where a controlled dangerous substance is discovered or mere association with a person who does control a controlled dangerous substance or the property where it is located does not support a finding of possession or attempted possession, constructive or otherwise.
The court did instruct the jury as follows:
The law also requires the defendant that an act be done knowingly and when done voluntarily and intentionally and not by mistake or accident or other innocent reasons. Guilty knowledge, though, subjectively may be inferred from the totality of the facts and circumstances shown by the evidence. Now, a defendant's mere presence taken alone in the vicinity of contraband is not enough to convict. The State must prove that the Defendant possessed the relevant items. And in our law, there are two types of possession, there can be an actual possession or a constructed possession. An actual or physical possession is when the possessor has a relevant item actually upon his person. Constructive possession occurs when the relevant items are not actually upon the person of the offender, but nevertheless, under his dominion or control.
* * * * * *
And in order to convict the Defendant of possession or attempted possession of cocaine, you have to find that he knowingly and intentionally attempted to possess a substance which in fact was cocaine.
A requested jury charge need not be given if its content is substantially covered by a general charge. C.Cr.P. art. 807; State v. Jones, 474 So.2d 919 (La.1985).
The defendant's requested charge is almost identical to that requested in State v. Camp, 517 So.2d 1202 (La.App. 4th Cir. 1987). In Camp, the trial court rejected the charge that "mere presence in the area where the guns were found, or mere association with the person or persons found to be in possession of the gun, is insufficient to constitute constructive possession." The trial judge's jury charge defined constructive possession as the exercise of dominion or control over the object, although the person is not in actual physical possession of that object. The charge did not mention "mere presence" or "mere association." This court found that the requested charge was not wholly correct because it did not allow for constructive possession to exist if the firearms were subject to the dominion and control of defendant. This court found that the requested charge was not wholly correct and was essentially included in the general charge and the trial court correctly refused to give the requested charge.
This assignment is without merit.
The defendant also complains that the trial judge erred in refusing to give the requested instruction on character evidence. The instruction given (included within the general instruction) was as follows:
[C]haracter is a generalized description of one's disposition or of one's disposition in respect to a general trade such as honesty, temperance or peacefulness.
* * * * * *
And if you find that the defendant offered evidence of his good character that testimony must be considered with and as part of all the evidence presented in the case. Due weight must be given to the evidence of good character, you may think it improbable that a person of good character would commit such an offense that the defendant is charged with. However, if you find that the State has proved the defendant guilty beyond a reasonable doubt, it is your duty to find him guilty even though there may be evidence of good character.
The general charge essentially includes the requested charge.
This assignment is without merit.

Assignments of Error Nos. 7 and 10
Defendant complains that the trial court's method of polling the jury and failure to grant his motion in arrest of judgment on that basis constitutes reversible error.
*99 The procedure for the written polling of the jury is set forth in La.C.Cr.P. art. 812(2), which provides:
The procedure for the written polling of the jury shall require that the clerk hand to each juror a separate piece of paper containing the name of the juror and the words "Is this your verdict?" Each juror shall write on the slip of paper the words "Yes" or "No" along with his signature. The clerk shall collect the slips of paper, make them available for inspection by the court and counsel, and record the verdict and order the jury discharged. If an insufficient number required to find a verdict answer "Yes," the court may remand the jury for further deliberation, or the court may declare a mistrial ..."
After giving the jury instructions and prior to deliberations, the trial judge gave the jury a verdict sheet and a poll sheet with the question "is this your verdict," on which each juror could individually check "Yes" or "No" in the space provided and sign their names. After the jury returned with their verdict of guilty as charged and with the polling sheet with six "yeses" checked, defense counsel objected to the polling method and moved for an oral polling, which motion was denied.
Defendant complains that the court's method of polling the jury did not comply with the requirements of C.Cr.P. art. 812 and undermined his due process rights to a fair trial. Defendant claims that the judge's method undermined the protection the jury serves to provide a defendant against a pressured verdict in the jury room by giving the juror an opportunity to individually assert his own conscientious agreement or disagreement with his fellow jurors in the open courtroom free of any coercive browbeating.
In State v. Williams, 536 So.2d 773 (La. App. 5th Cir.1988), there was "some sort of poll taken", there was evidence that the jury poll did not comply with statutory requirements, and the record contained no statement as to the result of the polling. The Fifth Circuit Court of Appeal found the technical error to be harmless (because there was no allegation of prejudice) and stated that "[a]s conducted, the polling did in fact record the verdict of the jurors." The court found no reversible error.
In the instant case, the record reflects that each juror checked the "yes" box on the poll sheet, indicating that the verdict sheet reflected his or her verdict, and signed his or her name next to the answer on the poll sheet. Defendant has failed to show any prejudice resulted from this polling method. The proper polling procedure however, is to poll the jury subsequent to their deliberations and verdict has been returned in open court. The error was simply a technical error which did not affect any substantial rights of the defendant.
The grounds for arrest of judgment are listed in La.C.Cr.P. art. 859:
Art. 859. Grounds for arrest of judgment.
The court shall arrest the judgment only on one or more of the following grounds:
(1) The indictment is substantially defective, in that an essential averment is omitted.
(2) The offense charged is not punishable under a valid statute;
(3) The court is without jurisdiction of the case;
(4) The tribunal that tried the case did not conform with the requirements of Articles 779, 780 and 782 of this code;
(5) The verdict is not responsive to the indictment, or is otherwise so defective that it will not form the basis of a valid judgment;
(6) Double jeopardy, if not previously urged; or
(7) The prosecution was not timely instituted, if not previously urged.
The verdict itself was correct in form, was responsive to the charge and was not defective, so that La.C.Cr.P. art. 859(5) is inapplicable. None of the other grounds for arrest of judgment are present.
These assignments are without merit.

*100 Assignments of Error Nos. 8, 9 and 11

By these assignments of error, defendant argues that the evidence was insufficient to sustain the conviction, and that because of the insufficiency of the evidence, the court improperly denied his Motion for Post-Judgment Verdict of Acquittal and Motion for a New Trial.
To prove the crime of attempted possession of cocaine, the State must prove beyond a reasonable doubt that defendant had the specific intent to knowingly or intentionally possess cocaine, and that he committed an act tending directly toward accomplishment of his intent of possession of the drug. R.S. 14:27, 40:967.
When examining evidence for sufficiency in a criminal prosecution, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The testimony of Det. Marina was as follows: He was told by telephone that the caller wanted to buy two ounces of cocaine and that he (the caller) would send someone to pick up the drugs. A few minutes later, appellant arrived and asked for two ounces of cocaine. When Marina insisted that defendant would have to pay for the cocaine, defendant called the previous caller and then gave the phone to Marina, who convinced that person that money would have to be provided prior to the cocaine transaction. Defendant left and returned a few minutes later with $1,000.00 in cash and asked for the cocaine. This testimony was substantially corroborated by Det. Lajarza.
Although this testimony was contradicted by defendant, who testified that he thought he was picking up two pornographic tapes on the first visit, and returned to repay a debt on the second visit, the jury clearly found the testimony of the officers more credible. The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. State v. Jones, 537 So.2d 1244 (La.App. 4th Cir. 1989).
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime of attempted possession of cocaine beyond a reasonable doubt. The evidence shows that defendant had the specific intent to knowingly or intentionally possess cocaine, and that he committed an act tending directly toward accomplishment of his intent of possession of the drug.
These assignments of error are without merit.
Accordingly, the conviction and sentence of defendant Oscar Valanzuela are hereby affirmed.
AFFIRMED.
NOTES
[1] Comment (b) to La.C.E. art. 401 states:

Although the definition of "relevant evidence" given in this Article differs somewhat from that provided by former R.S. 15:441-442, the difference is largely stylistic, as was recognized by the Louisiana Supreme Court in State v. Ludwig, 423 So.2d 1073 (La.1982).