751 So.2d 337 (1999)
STATE of Louisiana
v.
Ryan SHAPIRO.
No. 98-KA-1949.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1999.
*338 Ike Spears, Spears & Spears, New Orleans, Counsel for Defendant/Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge JOAN BERNARD ARMSTRONG and Judge MICHAEL E. KIRBY.
ARMSTRONG, Judge.

STATEMENT OF CASE
On April 25, 1997, the defendant, Ryan Shapiro, was charged with the possession with the intent to distribute marijuana. At his arraignment on May 13th he pled not guilty. After the case was reallotted to another section of court, several hearings were held on the defendant's motion to suppress the evidence. The trial court denied the motion on November 20, 1997. On December 15, 1997, the defendant withdrew his prior plea of not guilty and pled guilty as charged, reserving under State v. Crosby, 338 So.2d 584 (La.1976), his right to appeal the trial court's ruling on his suppression motion. He waived all delays, and the court immediately sentenced him to eight years at hard labor, suspended, and placed him on five years active probation with several conditions. The trial court granted his formal motion for appeal on December 19, 1997.

FACTS
The following facts were gleaned from the suppression hearings held on October 17, October 31, and November 4, 1997.[1] Just before noon on November 12, 1996, State Trooper Timothy Lafleur and a U.S. customs agent were on patrol on I-10 in Jefferson Davis Parish. As they neared mile marker 62, they noticed a Chrysler driving up behind them in the left-hand lane. The car came within twelve feet of the police car and followed it for approximately one-half mile, and then it changed into the right-hand lane, passed the police car, and changed again into the left-hand lane. The trooper pulled over the Chrysler, which was being driven by a woman. The woman, identified in the transcript as *339 only Mrs. Delvige, had a Texas driver's license. She told Trooper Lafleur that she and her husband, the passenger of the car, were driving from Beaumont, where they had stayed at a Hilton hotel, to New Orleans, where they planned to spend a week's vacation. Trooper Lafleur testified the Chrysler was a rental car, and the rental documents indicated the car had been rented by Ms. Billie Delvige, who was the mother of the passenger of the car. Trooper Lafleur testified he then spoke with Mr. Delvige, who told him he and his wife had spent the night at a Best Western hotel in Beaumont. Mr. Delvige stated he and his wife were driving to New Orleans, where they planned to spend only a few days. Trooper Lafleur testified Mr. Delvige appeared nervous and was shaking while he was speaking with the trooper. Trooper Lafleur returned to Mrs. Delvige, and she reiterated that she and her husband were planning to spend a week in New Orleans, although she allowed that her husband might have to leave a few days early.
Trooper Lafleur then issued a warning citation to Mrs. Delvige for following too closely in violation of La. R.S. 32:81 and requested that Mr. and Mrs. Delvige agree to a frisk of their persons and a search of their car. He testified that although he did not tell the suspects they were free to leave after he issued the citation, he emphasized he told them they could refuse to allow the searches. However, they both agreed, and Mrs. Delvige signed a consent to search form. The trooper searched both suspects and searched Mrs. Devige's purse, finding no contraband. He then searched the interior of the Chrysler, again finding no contraband. However, when he opened the trunk of the car, he sensed a strong odor of fabric softner, which he indicated was commonly used to mask the odor of drugs. He searched under the spare tire and found a bag which contained fabric softner wrapped around three clear bags of what was later found to be marijuana. He searched the trunk further and found more marijuana under the carpet. He testified the combined total of the marijuana was over thirty pounds. He then arrested both suspects.
State Trooper John Schmidt testified he participated in a controlled delivery of approximately thirty-one pounds of marijuana to the defendant Ryan Shapiro on the evening of November 12, 1996 in New Orleans. Trooper Schmidt testified that earlier that day he received information concerning the seizure of marijuana in Jefferson Davis Parish from a car driven by the wife of Melvin Delvige. He testified that Mr. Delvige told officers in Jefferson Davis Parish that he was to deliver the marijuana to "Ryan" at his home on West End Boulevard in New Orleans. Mr. Delvige agreed to cooperate with the police, and he agreed to wear a microphone during the delivery. Trooper Schmidt testified the officers received the marijuana and packaged all thirty-one pounds in one box. At approximately 6:00 p.m. he met with Delvige, who told him that he was engaged in a marijuana smuggling business with Shapiro and had made ten prior deliveries totaling approximately two hundred pounds of marijuana over the past few months. Delvige stated he always contacted Shapiro by calling his pager from a certain pay phone and leaving a certain code number. Delvige stated Shapiro would then either appear or call him back at that phone to make arrangements for delivery.
Trooper Schmidt testified that after speaking with Delvige, the officers placed a microphone on him. The officers first directed Delvige to go to 6539 West End Blvd., the place where Delvige had made the prior deliveries. However, there was no answer at that address, and Delvige then went to a convenience store at the corner of Harrison Avenue and Milne Street, the place from which he regularly contacted Shapiro. In accordance with his standard procedure, he paged Shapiro from the pay phone in front of the store, leaving the usual code. Shortly thereafter, *340 Shapiro called on the pay phone and told Delvige he would be there soon. Shapiro arrived in a Jeep, and when exiting he apparently locked his keys inside. Trooper Schmidt testified that over the microphone's broadcast he heard Shapiro tell Delvige to go to the West End residence and wait there for him while he called someone to bring him another set of keys to his Jeep. Shapiro was under the impression that Delvige had approximately 125 pounds of marijuana, not just thirty-one pounds. Trooper Schmidt testified that Shapiro also told Delvige that after he had delivered the marijuana to the West End address, he wanted Delvige to go with him to his new residence in Metairie. Delvige then left, while Shapiro remained until two friends arrived with an extra set of keys.
Trooper Schmidt testified that Shapiro then went to the West End address, where he met with Delvige. The officers watched as Delvige took the package of marijuana out of his car and carried it inside the lower apartment at that address. Shapiro also went inside the apartment. Shortly thereafter, the officers entered the residence, which contained no furniture, arrested Shapiro, and seized the package. The officers advised Shapiro of his Miranda rights. Shapiro then consented to a search of his Jeep and of his residence in Metairie. The officers searched Shapiro and his Jeep, but they found no contraband. They took Shapiro to his Metairie residence and searched it, finding approximately one ounce of marijuana, various smoking devices, and $4,490.00 in a golf bag which he claimed belonged to members of his band.[2]

Errors Patent
A review of the record for errors patent reveals there are none.

Assignment of Error
By his sole assignment of error, the defendant contends that the trial court erred by denying his motion to suppress the evidence. The defendant does not attack the actual seizure of the marijuana from his former residence on West End Boulevard; instead, he alleges the initial traffic stop of Mr. and Mrs. Delvige in Jefferson Davis Parish was illegal. He argues that the illegality of the stop tainted Mrs. Delvige's consent to search the car, which led to the discovery of the marijuana which was ultimately delivered to the defendant. The defendant contends that this taint extended to the delivery of the marijuana to him and its seizure at his former residence.
Trooper Lafleur testified he stopped the Delvige's car because Mrs. Delvige was following the police car too closely in violation of La. R.S. 32:81. At the suppression hearings, defense counsel sought to show that Trooper Lafleur and his partner were conducting a drug interdiction patrol, whereby they were looking for any drivers which may have fit a drug profile. At the November 20, 1997 hearing, counsel argued that Trooper Lafleur's asserted reason for stopping the car was merely a pretext to enable him to stop and search the car for drugs. The trial court rejected this argument, relying on Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879.
In Whren, officers observed a car sitting at an intersection containing two youths, both of whom were looking at something in the passenger's lap. The officers passed the car, made a U-turn, and drove back towards the car. The car turned right at the intersection without signaling and sped off, and the officers stopped the car for the traffic violations. As the officers approached *341 the car, they observed bags of crack cocaine sitting in the passenger's hands. On review of the passenger's conviction, the defense asserted that the evidence should have been suppressed because the traffic stop was merely a pretext for a stop based upon the officers' suspicion that the youths were involved in criminal activity. The Supreme Court rejected this claim, finding that any subjective underlying motive was irrelevant because the officers had probable cause to stop the car for the traffic violations.
Likewise, in Kalie, an officer saw a car weaving between lanes. The officer stopped the car, and the driver as well as the passenger (the defendant) appeared nervous. The occupants told the officer they were returning to Birmingham from Houston, where they had spent a few days visiting a friend. The officer determined the car had been rented by a third person, and the date of the rental indicated the occupants could not have been in Houston for longer than a day. The officer wrote a citation for the improper lane usage and asked the occupants to consent to a search of the car. He also called for canine backup. When the defendant refused to consent to the search, the officer told them they could go, but the car must remain. At that point, the canine unit arrived, and the detection dog "alerted" on the trunk of the car. The officer searched the trunk and found marijuana. On review of his conviction, the defendant argued the evidence should have been suppressed because the initial stop was merely a pretext in that the officer had been conducting a "drug interdiction patrol" at the time he stopped the car in which the defendant was riding. The Court rejected this argument, citing Whren and noting that the officer was justified in stopping the car for the traffic violation. The Court then noted the officer exceeded the scope of the traffic stop once he told the occupants the car had to remain after they refused to consent to a search of the car. The Court found that the officer had reasonable suspicion to detain the car for a short period given the occupants' nervousness and their story which was contradicted by the date of the car's rental. Once the narcotics dog "alerted" on the trunk of the car, the officers had probable cause to believe the car held contraband, and they were justified in searching it without a warrant.[3]
On appeal, defense counsel acknowledges Whren and Kalie, but he attempts to distinguish these cases by arguing that the traffic violation in this case, following too closely, is such a vaguely-worded statute as to be unconstitutional. He contends that any stop based upon an alleged violation of this statute cannot be upheld. La. R.S. 32:81 provides in pertinent part: "A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." Defense counsel argues that the very language of this statute is so vague as to fail to put a driver on notice as to what constitutes criminal activity in violation of the statute, and thus it is unconstitutional and cannot form the basis of a traffic stop.
This argument concerning the constitutionality of La. R.S. 32:81 was rejected by the Third Circuit Court of Appeal in State v. Giovengo, 96-1227 (La.App. 3 Cir. 2/26/97), 692 So.2d 462[4] and by the Second Circuit in State v. Cohen, 549 So.2d 884 (La.App. 2 Cir.1989)[5]. In Giovengo, the court stated:
Contrary to the defendant's argument, La.R.S. 32:81(A) has already been held *342 to be constitutionally specific. In State v. Cohen, 549 So.2d 884 (La.App. 2 Cir. 1989), writ denied, 559 So.2d 135 (La. 1990), a state trooper pulled over the defendant for following too closely behind another car. In the course of events, a search was conducted on the defendant's car; this search yielded 180 pounds of marijuana compressed in suitcases in the trunk. On appeal, one of the defendant's arguments was that the language of the statute was unconstitutionally vague. Citing State v. McCoy, 395 So.2d 319 (La.1980), the court discussed the test on the constitutionality of a statute when the defendant is arguing a vagueness problem:
Words used in statutes need not have the same precision as mathematical symbols. Due process requires only that the language of a statute have generally accepted meaning so that a person of ordinary and reasonable intelligence is capable of discerning its proscriptions and is given fair notice of the conduct which is forbidden by its terms. (citations omitted.)

Cohen, 549 So.2d at 886.
Thus, in applying the aforementioned standard to La.R.S. 32:81(A), the court held that the statute was constitutionally specific:
Here, the language of the statute, given a generally accepted meaning and read in pari materia, would indicate that a following car should leave enough room in case the car in front stopped suddenly.
Id.
In this case, the officer did not believe that the defendant had maintained enough room between his car and the car he was trying to pass; the officer believed that if the car in front of the defendant had stopped suddenly, there was a great possibility an accident would occur.
We adopt the sound legal reasoning utilized in Cohen. Therefore, the defendant's contention is without merit; Cohen clearly states that La.R.S. 32:81 is not unconstitutionally vague and we agree.
Giovengo, 96-1227, pp. 2-3, 692 So.2d at 463.
Although this court has not addressed the constitutionality of La. R.S. 32:81, the reasoning of Giovengo and Cohen is persuasive. Thus, it appears the statute is constitutional, and Trooper Lafleur had probable cause to stop the Delvige's car for the violation of La. R.S. 32:81.
Once the car was stopped, the Delviges' contradictory answers to the officer's questions and Mr. Delvige's nervous demeanor gave Trooper Lafleur reasonable suspicion to believe the Delviges were involved in criminal activity. See Kalie. At that point, the trooper asked them to consent to a search of the car, and Mrs. Delvige agreed and signed a consent form. In State v. Irby, 93-2265, p. 5 (La.App. 4th Cir.1/13/94), 632 So.2d 798, 800, this court stated:
In order to rely upon the consent exception to the warrant requirement, the State must prove that the consent was freely and voluntarily given. See State v. Wilson, 467 So.2d 503 (La.1985), cert. den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Brown, 598 So.2d 565 (La.App. 4th Cir.1992), writ den. 605 So.2d 1092 (1992); State v. Valenzuela, 590 So.2d 89 (La.App. 4th Cir.1991) writ den. 593 So.2d 380 (1992), cert. den. Valenzuela v. Louisiana, [506] U.S. [843], 113 S.Ct. 130, 121 L.Ed.2d 84 (1992). The voluntariness of consent is a question of fact to be determined by the district court under the facts and circumstances of each case, and its determination is entitled to great weight on review. Wilson; State v. Ossey, 446 So.2d 280 (La.1984), cert. den. Ossey v. *343 Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); Valenzuela.

See also State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132; State v. O'Shea, 97-0400 (La.App. 4 Cir. 5/21/97), 696 So.2d 115.[6]
Here, Trooper Lafleur testified he asked the Delviges if they would consent to a search of the car, and Mrs. Delvige agreed to do so and signed the consent to search form. The trooper admitted he did not tell the Delviges they could go when he wrote the warning citation, but he insisted he told them they could refuse to consent to the search. The defense presented nothing to refute this testimony. Thus, the search was lawfully conducted pursuant to Mrs. Delvige's consent, and the marijuana found in the trunk of the car was lawfully seized.
As noted above, the defendant does not argue that the ensuing controlled delivery of the marijuana to his former residence in New Orleans was invalid, except to the extent that it was the product of the original stop in Jefferson Davis Parish. For the reasons set forth above, we find that the initial stop of the Delvige's car was lawful, as was the consensual search which revealed the marijuana. This assignment of error has no merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] A suppression hearing was held in August, 1997, before the case was reallotted. However, the officer who testified at that hearing also testified at the October 17, 1997 and November 4, 1997 hearing, and there is no indication the trial court considered any testimony from the August hearing.
[2] Trooper Schmidt also testified as to a second search of Shapiro's Metairie residence in February, 1997, pursuant to a search warrant where guns and more marijuana were seized. However, as this evidence was not seized in Orleans Parish and was seized on a date later than that alleged on the bill of information in this case, evidence of this search does not pertain to the case before this court.
[3] In the other two cases cited by the defendant, U.S. v. Mitchell, 951 F.2d 1291 (D.C.Cir. 1991), and U.S. v. Ferguson, 8 F.3d 385 (6 Cir.1993), the courts upheld stops initiated by violations of traffic ordinances, rejecting a similar "pretext" argument.
[4] Writ den. 97-0784 (La.9/26/97), 701 So.2d 981.
[5] Writ den. 559 So.2d 135 (La.1990).
[6] Writ den. 97-2134 (La.11/14/97), 703 So.2d 631.