632 So.2d 798 (1994)
STATE of Louisiana
v.
Michael IRBY.
No. 93-K-2265.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1994.
Bruce G. Whittaker, New Orleans, for relator.
Harry F. Connick, Dist. Atty., New Orleans, for respondent.
Before BARRY, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
On December 9, 1991, defendant Michael Irby was charged with possession of more than 400 grams of cocaine. He was at large for a time, and it was not until August 20, 1993, that he was arraigned and pled not guilty. His motion to suppress the evidence, heard September 21st, was denied in part and granted in part on October 22nd. The defendant now comes before this court seeking relief from the partial denial of this motion. A companion writ, 632 So.2d 801 (La. App.1994), has been filed by the State complaining about the partial granting of his motion. We now grant defendant's application for supervisory writs to consider the correctness of that part of the trial court's ruling denying defendant's motion to suppress the evidence.
On June 26, 1991, N.O.P.D. narcotics officers received a tip that the defendant, Michael Irby, was distributing crack cocaine in the area of Plainsfield Drive in eastern New Orleans. The tip indicated that Irby had just moved into the area and that he was distributing the drugs from his cars, a late model Porsche and a Chevy Spectrum. Around that time, they received another tip listing Irby's address as 2769 Jasmine Street and indicating that he stored the drugs at an apartment on Plainsfield Drive and sold the drugs from his sister's apartment at 4000 Hamburg Street, Apartment F, in the St. Bernard Housing Project. The tip also noted that Irby used a Peugeot which was registered in his sister's name. The officers attempted to confirm this information but were unable to do so at that time.
*799 On September 27, 1991, the officers received a telephone complaint that Irby was selling cocaine from a residence in the St. Bernard Project. The tip indicated that Irby kept the drugs at his house on Jasmine Street and that he used a white Suzuki jeep to transport the cocaine. On October 10th narcotics officers set up a surveillance of the Jasmine Street residence and eventually observed the defendant pull up to the house in a white Suzuki and park in the driveway. From their vantage point, the officers were unable to see the vehicle once it had pulled back into the driveway. After waiting a time and not seeking the defendant emerge toward the front of the residence, the officers left their position and drove by the driveway. As they passed by, they looked down the driveway and saw the defendant entering a shed which was located in the rear of the house. They drove back to their original position, and a few minutes later they saw the defendant leave in the Suzuki. They followed him but lost him once he entered the St. Bernard Housing Project.
On October 11th, they again set up a surveillance of the Jasmine Street residence. Soon thereafter, they saw the defendant drive up in the Suzuki, exit the vehicle, and go into the shed at the rear of the property. Remaining there only a few minutes, the defendant left the shed carrying a gray cloth bag. He reentered the Suzuki and left the house. The officers again followed him to the St. Bernard Housing Project, where he pulled into a driveway in the 3900 block of Duplessis Street. He left the Suzuki, carrying the gray bag, and entered an apartment at 3939 Duplessis. He remained there a short time, and when he reappeared he was not carrying the bag. He was stopped as he was reentering the Suzuki, advised of his rights, and advised that he was under investigation for narcotics violations. In response to the officers' questions, the defendant denied that he had entered the apartment and denied knowing who lived there.
The officers took Irby back to the apartment from which he had just emerged. They knocked on the door, which was opened by Kim Miles. In response to the officers' question, she identified the defendant as her cousin. the officers advised her of her rights, advised her that she was also under investigation for narcotics activity, and asked her if she would consent to a search of her apartment. The officers told her that if she did not consent, they would hold her there until they had obtained a search warrant. Ms. Miles told the officers she knew nothing about any drugs and she consented to a search of the apartment. She indicated that the defendant had gone into a bedroom while he was visiting her. The officers entered that bedroom and found the gray cloth bag hidden in a blanket in the bedroom. They opened the bag and found it contained approximately fourteen or fifteen grams of crack cocaine. Approximately $120.00 and a gun were also seized. The defendant was placed under arrest, and he told Ms. Miles to "take the rap" for the cocaine and he would take care of her.
The defendant told the officers that he lived at the Jasmine Street residence with his mother. The officers decided to apply for a warrant to search that residence. As they were taking Irby to their car, he suddenly called out to his mother, who had appeared on the scene, to call Jasmine Street because the officers were going there. Fearing that evidence might be destroyed before a warrant could be obtained, the officers went directly to the Jasmine Street residence. Once there the officers knocked on the door, which was opened by the defendant's brother. The brother refused to allow the officers to enter the house. One officer described the brother as violent and acting irrationally. The officers decided to obtain a warrant to search the house, and a few of them left to prepare it. The defendant's mother soon drove up in the Suzuki, which had been left in the project. When told that a warrant was being prepared, she agreed to allow the officers to search the house.
The defendant was taken into the house and left with one officer while the other officers searched the house. Finding nothing in the house, the officers went to the shed, which was locked. Finding no key in the house or on the defendant, the officers broke into the shed and found a scale and an old lunch box hidden in the rafters which contained *800 approximately twenty-eight ounces of cocaine. When the defendant realized the officers were searching the shed, he ran through the house and exited the back door, but he was captured in the back yard. Prior to the time the officers broke into the shed the defendant's mother indicated that the shed did not belong to them but instead belonged to the neighbors. The neighbors, however, told the officers that the shed belonged to the defendant's house. After the defendant had been taken to police headquarters, he told the officers that he obtained his drugs from two Cubans who lived across the river.
After hearing this evidence, the trial court denied the motion to suppress the evidence seized from Duplessis Street but suppressed the evidence seized from the shed on Jasmine Street.
In his application, the defendant contends that the drugs seized from Ms. Miles' apartment in the St. Bernard Housing Project should have been suppressed because Ms. Miles did not voluntarily and freely consent to the officers' search of her apartment. He argues that the officers' actions amounted to an illegal detention, even an arrest, of Ms. Miles for which the officers did not have authority.
In order to rely upon the consent exception to the warrant requirement, the State must prove that the consent was freely and voluntarily given. See State v. Wilson, 467 So.2d 503 (La.1985), cert. den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Brown, 598 So.2d 565 (La.App. 4th Cir.1992), writ den. 605 So.2d 1092 (1992); State v. Valenzuela, 590 So.2d 89 (La.App. 4th Cir.1991) writ den. 593 So.2d 380 (1992), cert. den. Valenzuela v. Louisiana, ___ U.S. ___, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992). The voluntariness of consent is a question of fact to be determined by the district court under the facts and circumstances of each case, and its determination is entitled to great weight on review. Wilson; State v. Ossey, 446 So.2d 280 (La.1984), cert. den. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); Valenzuela.
Here, Ms. Miles signed a consent to search form after the officers advised her of her rights, told her that she was under investigation for drug activities, and told her that if she did not consent to the search she would be detained until a warrant could be obtained. The defendant argues that this detention was an arrest, for which the officers did not have probable cause. However, it does not appear that this conduct amounted to an arrest but merely a limited detention while the officers obtained the warrant. Indeed, it is clear that the officers did not intend to "arrest" Ms. Miles because even after the cocaine was found in her apartment, she was not arrested. Other than telling her that she would have to remain in the apartment until the warrant was obtained, the officers did not threaten or coerce her into consenting to the search. Indeed, she directed the officers to the bedroom where the defendant had gone during his brief visit to the apartment.[1]
Alternatively, the defendant argues that the officers' actions constituted an investigatory stop of Ms. Miles, for which they did not have reasonable suspicion of criminal activity. The authorization for a temporary stop by a police officer of a person in a public place is set forth in C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Carey, 609 So.2d 897 (La.App. 4th Cir.1992); State v. Guy, 575 So.2d 429 (La.App. 4th Cir.1991), *801 writ den. 578 So.2d 930 (1991); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir. 1990); State v. Jones, 483 So.2d 1207 (La. App. 4th Cir.1986), writ den. 488 So.2d 197 (1986). As this court noted in Johnson:
"Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, supra. Mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982).
Johnson, 557 So.2d at 1033. See also Carey; Guy.
Here, the officers had reasonable suspicion that drugs would be found in Ms. Miles' apartment. They had received a tip that the defendant was selling drugs in the St. Bernard Housing Project, where Ms. Miles' apartment was located. The tip also indicated that the defendant was storing the drugs at his house on Jasmine Street and that he drove a white Suzuki when making deliveries to the project. The officers twice observed him leave his house and drive to the St. Bernard Housing Project in the Suzuki. The second time they observed this, they also saw him take a gray bag from the shed in his house, take it inside Ms. Miles' apartment, and leave soon thereafter without the bag. Given these facts, the officers definitely had reasonable suspicion that narcotics activities were connected with Ms. Miles' apartment. As such, they could effect a limited detention of her.
Given these facts, we find no error in the trial court's finding that Ms. Miles voluntarily consented to the search of her apartment.
For the foregoing reasons, we affirm that part of the trial judgment denying defendant's motion to suppress the evidence seized from the Duplessis Street residence.
AFFIRMED.
JONES, J., concurs in part and dissents in part.
JONES, Judge concurs in part and dissents in part.
I agree with the majority in their result, however the application of La.C.Cr.P. article 215.1 is misplaced in this case. Ms. Miles, when standing at the front door of her home, clearly is not in a "public place." Therefore, to find that the officers needed only "reasonable suspicion" to stop and question Ms. Miles is in error. From this portion of the majority's opinion I dissent.
Because I find that relator cannot assert, on Ms. Miles behalf, an infringement of her right to freedom from police interference, I concur with the result.
NOTES
[1] See also State v. Malcolm Perry, unpub. (92-K-1482, La.App. 4th Cir., July 20, 1992), where this court found that the trial court did not abuse its discretion by finding that a person's consent to search her residence was voluntary where the officers advised the resident of her rights, advised her she was under investigation for possession of narcotics, and told her they were "going to secure her residence and attempt to get a search warrant so [they] could search her residence." Compare State v. Alexis, 514 So.2d 561 (La.App. 4th Cir.1987), where police officers threatened an entire family with arrest if they did not consent to the officers' search.