748 So.2d 527 (1999)
STATE of Louisiana
v.
Jeffery JOHNSON.
No. 98-KA-2544.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1999.
*528 Harry F. Connick, District Attorney of Orleans Parish, John Jerry Glas, Assistant District Attorney, New Orleans, Louisiana, Counsel For State-Appellee.
Sherry Waters, Louisiana Appellate Project, Robert Deubel Tulane, Law School Community Service Program, New Orleans, Louisiana, Counsel For Defendant-Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge MIRIAM G. WALTZER, Judge ROBERT A. KATZ.
WALTZER, Judge.
On 7 February, 1994, defendant Jeffery Johnson was charged by bill of information with distribution of cocaine, a violation of La. R.S. 40:967. Defendant pled not guilty at his arraignment on 18 May, 1995.[1] The trial court denied defendant's motion to suppress the evidence on 1 June, 1995. A twelve-person jury found defendant guilty as charged at trial on 19 June, 1995. On 25 July, 1995, defendant admitted being a second-felony habitual offender and was adjudicated as such. After waiving all legal delays, defendant was sentenced to serve fifteen years at hard labor, with credit for time served. The trial court denied defendant's motion to reconsider sentence but granted his motion for appeal.
On 2 October, 1996, this court affirmed defendant's conviction and sentence in an errors patent appeal.[2] On 31 October, *529 1997, this court denied defendant's application for post-conviction relief.[3] However, on 17 February, 1998, this court granted defendant an out-of-time appeal.[4]

STATEMENT OF FACTS:
New Orleans Police Officer Roland Matthews testified that, on 17 November, 1993, Detectives Dwayne Marshall and Calvin Brazley received information from an anonymous source that a black male was distributing crack cocaine from a motel on Tulane Avenue. In anticipation of a controlled purchase, Det. Marshall photocopied a twenty-dollar bill on which Officer Matthews had written his initials and badge number.
The officers proceeded to the motel, located at 4025 Tulane Avenue, where Officer Matthews went to Room 310, while Detectives Brazley and Marshall waited nearby. Officer Matthews knocked on the door, and defendant answered. Defendant asked Officer Matthews what he wanted, and the officer replied that he wanted a "20-cent piece," meaning a twenty-dollar piece of crack cocaine. Defendant walked to the bathroom area and returned with two small packets. Defendant opened one packet and emptied out several pieces, stating that those were the only ones he had for sale. Officer Matthews selected one piece and gave defendant the twenty-dollar bill.
Officer Matthews further said that he noticed three suitcases at the foot of the bed, all of which appeared to be packed; he also observed that there were no clothes in the closet. Officer Matthews said his observations indicated to him that the defendant and his wife, who was lying on the bed in the room, were from out of town and were perhaps preparing to leave. Because of this concern, Officer Matthews signaled to the other officers as he walked away from the room. The other officers moved in and prevented defendant from closing the door. As Officer Matthews was returning to the room, he observed Det. Marshall retrieve the twenty-dollar bill from the pocket of defendant's T-shirt. Officer Matthews said Det. Marshall also had taken possession of a firearm that he had seen on a nightstand. Officer Matthews identified the twenty-dollar bill recovered from defendant with the officer's initials and badge number on it; what appeared to be the piece of cocaine defendant sold him; the remaining packet of cocaine found after the room was searched; and the firearm seized from the nightstand. Officer Matthews identified what he said appeared to be a copy of a consent form signed by defendant's wife, permitting police to search the room. Officer Matthews testified that Mrs. Johnson signed the form voluntarily and that no one had threatened her. Officer Matthews stated that, after the cocaine was found, both defendant and his wife were arrested for possession with the intent to distribute cocaine. Defendant was also arrested for distribution of cocaine.
On cross-examination, Officer Matthews stated that he did not know how many days defendant had been staying at the hotel, but he said the room had been rented in Mrs. Johnson's name.
Det. Brazley's testimony essentially agreed with that of Officer Matthews. Det. Brazley identified the motel as the Capri Motel. He said an unidentified caller reported that a black male in this particular room had asked the caller if he wanted to purchase crack cocaine. The caller reported that there were nine ounces of cocaine in the room, although only nine grams of cocaine were actually recovered. Det. Brazley observed Officer Matthews approach the door and knock on it. He saw a black male answer, speak to Officer Matthews, and saw the officer enter the room. Det. Brazley stated that, when Officer Matthews left the room and signaled to him and other officers, they *530 moved in before defendant could close the door. He said they identified themselves as police officers, and defendant attempted to force the door closed. The officers then secured the room. Det. Brazley said defendant was informed that he was being arrested for the sale. Defendant's wife, who had rented the room, said she had nothing to hide and freely signed the consent to search form. Det. Brazley identified the consent to search form.
Det. Marshall testified that Officer Keith Joseph was also involved in the arrest. He stated that, after Officer Matthews signaled for the officers to go, they proceeded toward the motel room, and defendant attempted to shut the door. The officers prevented him from doing so, entered the room, saw the gun on the nightstand, and secured it. Det. Marshall said he pulled the currency out of defendant's top pocket, which was marked with Officer Matthews' initials and his badge number. Det. Marshall said he observed Det. Brazley go over the consent to search form with defendant's wife, who identified herself as the renter of the motel room, before she voluntarily signed it. Det. Marshall said the officers found 9.19 grams of cocaine in the room, which he identified. On cross-examination, Det. Marshall said that no drugs were found on either defendant or defendant's wife.
It was stipulated that, if New Orleans Police Department Criminalist William Giblin would testify, he would state that the substances seized from the motel room tested positive for cocaine.
Nicole Johnson, defendant's wife, testified that she and defendant both resided in Alexandria, Louisiana, at the time in question and had arrived at the motel earlier that morning. She said they had come to New Orleans to visit her brother-in-law and sister-in-law. Mrs. Johnson said no one came to their room prior to the arrival of the police. She testified that defendant left the room earlier to take out trash. She said she had been asleep when police "busted into" the room and that she had just gotten out of the hospital and was on medication. She stated that the police put a gun to her head and to her husband's head, told her to get out of the bed and onto the floor, and then searched the room. She maintained that afterward police sat her on the bed and asked for her consent to search the couple's luggage. Mrs. Johnson said she told the officers she had nothing to hide and signed the consent to search form.
On cross-examination, Mrs. Johnson admitted that because she was asleep, she had no knowledge of anyone coming to the hotel room. She testified that officers searched the room, the bathroom, and the area around the bed before they asked her to sign the consent to search form. Mrs. Johnson said the officers claimed they found cocaine in the bathroom. She stated that the officers entered the room with their guns drawn and took money from her husband's shirt pocket and pants pocket.

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR
In defendant's sole assignment of error, he claims that the trial court erred in denying his motion to suppress the evidence.
At a hearing on a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217 p. 10 (La. App. 4 Cir. 2/24/99), 731 So.2d 389, 395. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, as the court has been able to observe the witnesses and weigh the credibility of their testimony. Id. When reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670 p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
*531 As a general rule, searches and seizures made without a warrant issued subsequent to a judge or magistrate's finding of probable cause "are per se unreasonable and violative of a citizen's rights under the Fourth Amendment to the U.S. Constitution and Article 1, Sec. 5 of the Louisiana Constitution." Id. An officer has probable cause to arrest or to search when the facts and circumstances known to him and of which he has reasonably trustworthy information are sufficient to justify a person of ordinary caution in believing that the person to be arrested has committed a crime or that the area to be searched contains evidence of a crime. See State v. Brown, 99-0640 p. 5 (La.App. 4 Cir. 5/26/99), 733 So.2d 1282, 1285 (citing State v. Wilson, 467 So.2d 503, 515 (La. 1985), cert. denied sub nom. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985)). However, probable cause alone does not justify the invasion of a citizen's reasonable expectations of privacy. A warrantless intrusion into a "protected area," an area in which someone has reasonable expectations of privacy, is only justified when there is both probable cause and exigent circumstances.. See id.; see also State v. Blue, 97-2699, p. 3 (La.App. 4 Cir. 1/7/98), 705 So.2d 1242, 1244, writ denied, 98-0340 (La.3/27/98), 716 So.2d 887. Accordingly, exigent circumstances are those exceptional circumstances that, combined with probable cause, justify the invasion of reasonable expectations of privacy. Brown, 733 So.2d at 1285. Examples of exigent circumstances have been found to be an escape attempt by the defendant; the possibility of a violent confrontation that could cause injury to the officers and the public; and the possibility that evidence will be destroyed. Id.; State v. Page, 95-2401 p. 10 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709, writ denied, 96-2352 (La.2/21/97), 688 So.2d 522. In such situations, obtaining a warrant is impractical, so the warrant requirement may be foregone.
In the instant case, Officer Matthews testified that he purchased cocaine from defendant. He signaled to the three other officers, indicating to them that a sale had occurred and that defendant should be arrested. As the officers approached the motel room, they had probable cause to believe that defendant had committed the crime of distributing cocaine. When defendant saw the officers, who identified themselves, approaching him, he attempted to shut the door. If defendant had succeeded in closing and locking the door, he could have attempted either to destroy any evidence inside of the room or to arm himself and initiate a violent confrontation.[5] In the face of this exigent circumstance, the officers properly prevented defendant from closing the door and forced their way into the hotel room to secure it.[6] Once in the room, the officers presumably noticed the cocaine in plain view in the bathroom, allowing them to seize it lawfully.[7]
Even if we assume that the officers improperly entered the room, all three testified that the cocaine was discovered after defendant's wife signed the consent to search form. A search conducted pursuant to consent is a recognized exception to the warrant requirement. See Nogess, 729 So.2d at 138 (citing State v. Franklin, 95-1876 p. 5 (La.1/14/97), 686 So.2d 38, 41). "The burden is on the State to prove that such consent to search was given freely and voluntarily." Id. According to the three police officers who testified, defendant's wife, who admitted that the motel room had been rented in *532 her name, freely and voluntarily signed a consent to search the room. Defendant's wife confirmed that she freely signed the consent form because, she claimed, she had nothing to hide. While Det. Brazley testified that defendant's wife was informed that police were planning to obtain a search warrant, the statement that a warrant will be obtained if an individual does not agree to a search is not coercion or fraud that vitiates consent. State v. Franklin, 95-1876 p. 6 (La.1/14/97), 686 So.2d 38, 41; State v. O'Shea, 97-0400 p. 8 (La.App. 4 Cir. 5/21/97), 696 So.2d 115, 119, writ denied, 97-2134 (La.11/4/97), 703 So.2d 631.
Mrs. Johnson did dispute the officers' version of the events, stating that the room was searched prior to her giving consent to search and that her consent to search was only given as to luggage. But relying on the officers' testimony, the trial court apparently disregarded her testimony and found that her consent was given prior to the search of the room.
In sum, the officers lawfully entered the motel room based on a combination of probable cause and exigent circumstances and then lawfully seized the cocaine based either on the plain view doctrine or on Mrs. Johnson's consent to their search.[8] Considering all of the evidence, the trial court did not abuse its discretion in denying the motion to suppress.
Because there is no merit to this assignment of error, we affirm defendant's conviction and sentence.
NOTES
[1] The delay in arraignment was the result of error, whereby defendant was transferred to Marksville, Louisiana, where he was released by officials and remained at-large for a time.
[2] State v. Johnson, unpub. 95-2301 (La.App. 4 Cir. 10/2/96), 680 So.2d 792.
[3] State v. Johnson, unpub. 97-2336 (La.App. 4 Cir. 10/31/97).
[4] State v. Johnson, unpub. 97-2816 (La.App. 4 Cir. 2/17/98).
[5] It should be noted that Officer Matthews testified to seeing the gun on the nightstand during the controlled purchase in the room.
[6] We have, of course, assumed that defendant and his wife had a reasonable expectation of privacy in the room.
[7] No one appears to have testified to the exact location of the bagged cocaine.
[8] Moreover, even assuming the search's illegality, the cocaine could possibly have been admissible under the doctrine of inevitable discovery because the police would have been able to obtain a search warrant for the room and would then have conducted a lawful search. But we express no opinion on that issue. For a discussion of the doctrine of inevitable discovery, see State v. Jones, 98-0963, pp. 7-8 (La.App. 4 Cir. 6/24/98), 720 So.2d 1.