JjBYRNES, J.
We grant the State’s writ application to review the trial court’s ruling that granted the defendant Ronald J. Hamilton’s motion to suppress the evidence. The defendant was charged with possession of cocaine, a violation of La. R.S. 40:967(02, and being a felon in possession of a firearm, a violation of La. R.S. 14:95.1. We reverse and remand.
At the April 6, 2000 hearing Officer Randy Greenup testified that on July 6, 1999 he and his partner, Officer Derrick Williams, were on pro-active patrol in the area of Frenchman and Claiborne near the Bottom Line nightclub. The officers saw a group of individuals as they exited the club. The club patrons were arguing and making loud comments to each other. Officer Greenup said that he and his partner heard Hamilton “state he was going home to get his gun.”
The two officers called in some additional units and followed Hamilton. The officers became “jammed up with some traffic,” but were “able to get close enough to him.” Officer Greenup stated that he exited his police vehicle on Elysian Fields and told Hamilton to put his hands on the wall (thinking that Hamilton had obtained a gun). Hamilton had no gun, but declared that he was going into the house in which his wife resided. The officers did not know whether Hamilton’s 12wife resided at the location. Officer Williams knocked on the door. A female answered the door and identified herself as Hamilton’s wife. She said that Hamilton “does live there, sometimes he doesn’t.” When Officer Greenup *416 asked Hamilton where he lived, he gave an address in the St. Bernard Housing Development.
Officer Williams continued to talk to Hamilton’s wife, and Officer Greenup spoke to Hamilton. The officers learned that Hamilton’s mother lived in the housing development, and the couple frequented her residence and the house on Elysian Fields. The officers explained the purpose of the investigation, and Hamilton’s wife stated that she knew of no guns in the house. She noted that she had a small child in the residence and wanted any weapons removed. She consented to the search of the residence and signed a consent form. Officer Greenup answered affirmatively when he was asked whether he explained to the woman that she could refuse to consent to the search and whether she consented of her own free will.
Pursuant to a question by the court, the officer stated that Hamilton was stopped “[r]ight in front of the residence.” The officer elaborated that the officers “weren’t sure if he had made it in the house and came back out or if he was just — ” The trial court asked whether Hamilton was outside, and Officer Greenup answered affirmatively. The officer stated that the consent form listed witnesses to the woman’s signature. One was Officer Williams.
According to Officer Greenup, Hamilton’s wife brought him to the room shared by her and Hamilton. The officers searched the areas where they thought a person might hide a weapon. Officer Greenup said that they found a small bag containing what he believed to be crack cocaine in “the dresser, one of the drawers lain the chest of drawers....” Officer Greenup stepped outside and asked the defendant if Hamilton had any knowledge of it. Hamilton acknowledged that the cocaine belonged to him. He said that he had to take care of his family. The officer testified that Hamilton had been advised of his rights before the officers entered the residence although Officer Greenup could not recall which officer read the defendant his rights.
Hamilton asked to speak to his wife, and the officers agreed. Hamilton’s wife told Officer Williams that she knew exactly where the gun was located. Officer Williams went inside with Hamilton’s wife and returned shortly with the weapon. The officers advised Hamilton that he was also under arrest for possession of the gun because he “was found to be a convicted felon.” The officer stated: “And we later found that he had a municipal attachment for him.”
On cross-examination Officer Greenup stated that he did not know the defendant before that day, but his partner knew “of Mr. Hamilton.” When Officer Greenup was asked whether his partner knew the defendant “from other altercations with him or something,” he answered: “Exactly.” The officer agreed that he and his partner followed only Hamilton from the group exiting the nightclub. Officer Greenup stated that they observed Hamilton involved in only a verbal altercation.
After the officers followed Hamilton and were able to get close to him (within a couple of feet), Officer Williams could see Hamilton clearly and knew him. The trial court noted that no gun or cocaine was involved in the verbal argument. Officer Greenup testified that he and his partner followed Hamilton for a little over a block before stopping him. The police placed Hamilton up against the wall, and informed him that he was under investigation. The officer did not|4handcuff Hamilton at that point, but Officer Greenup said that Hamilton was not free to leave. When asked if he had “any warrants or anything,” the officer affirmed that he did not. Officer Greenup patted down and searched Hamilton but found no weapons or drugs.
The trial court noted that Hamilton’s wife said that the defendant sometimes lived there, but the trial court questioned where the cocaine and the gun fit into the picture. The trial court noted that the *417 officers stopped Hamilton outside of the residence, where he sometimes lived. The officers found no gun or cocaine on the defendant. Defense counsel asked whether the officers had a warrant, and the trial court noted that the officers obtained consent from the woman in the house. The trial court declared that it was not dealing with the warrant; it was concerned about the gun and the cocaine. Counsel asked the officer where in the defendant’s house he found the cocaine. The trial court stated:
He didn’t search his house. He already told him he lived in the St. Bernard project. So he didn’t search his house. The lady who answered the door even said that sometimes he lives there and sometimes he doesn’t. He’s stopped outside. There’s no gun on him, there’s no cocaine on him. That’s cut and dry as far as I’m concerned. Now the 4th Circuit might see it different. I find based on the testimony, I’m going to find at this particular point there’s no probable cause for theses charges. Cut to the chase and get this over with.
The trial court continued that the officer already said that he stopped Hamilton outside, not in the house. The trial court found no probable cause for the gun charge and the cocaine charge.
The State argues that the trial court erred by granting the motion to suppress the evidence seized pursuant to a valid investigatory stop, as well as a legal safety pat-down of the defendant, and a valid voluntary consent to search by Hamilton’s wife. The State asserts that the officers overheard Hamilton say that he was going |fihome to get his gun after a verbal altercation. The officers followed Hamilton in his car to the Elysian Fields address and stopped Hamilton before he could retrieve his weapon inside. The State contends that the officers were trying to prevent a violent confrontation and were trying to protect the public. The State asserts that Hamilton’s wife signed the consent form, and her consent was freely given.
The issues are: (1) whether the officers had “reasonable suspicion” for an investigatory stop of Hamilton on the street; (2) whether the officers legally searched Hamilton for weapons; and (3) whether Hamilton had an expectation of privacy in his wife’s residence where his wife gave her consent to search the premises.
Generally, searches and seizures made without a warrant issued on prior approval by a judge or magistrate are per se unreasonable and violative of a citizen’s rights under the Fourth Amendment to the U.S. Constitution and Article 1, Sec. 5 of the Louisiana Constitution. State v. Basile, 97-1162, p. 4 (La.App. 4 Cir. 9/24/97), 700 So.2d 1062, writ denied, 97-2503 (La.12/19/97), 706 So.2d 455. On trial of a motion to suppress the evidence, the State has the burden of proving the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703. State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132.
The appellate court reviews the district court’s findings of fact on a motion to suppress under a clearly erroneous standard, and will review the district court’s ultimate determination of Fourth Amendment reasonableness de novo. U.S. v. Seals, 987 F.2d 1102 (5 Cir.1993), cert. denied, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). On mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo. United States v. O’Keefe, 128 F.3d 885 (5 Cir.1997), cert. denied, 523 U.S. 1078, 118 S.Ct. 1525, 140 L.Ed.2d 676 (1998).
A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La. C.Cr.P.' Art. 215.1. “Reasonable suspicion” for an investigatory stop is something less than the probable cause required for an arrest. State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d *418 819. A reviewing court must take into account the “totality of the circumstances — whole picture,” giving deference to the inferences and deductions of a trained police officer “that might well elude an untrained person.” United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. Deference should be given to the experience of the policemen who were present at the time of the incident; in reviewing the totality of circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549.
In State v. Huntley, supra, 708 So.2d at 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police “ ‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore “articulate something more than an “ ‘inchoate and unparticularized suspicion or “hunch.” ’ ” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only “ ‘some minimal level of objective justification. ..Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the “totality of the circumstances — the whole picture,” giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 499 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police “not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.” Id. [Emphasis added.]
In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 880, the Louisiana Supreme Court found that: “the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action,” citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers need “articulable facts” taking into account the entire picture. If the officers were required to articulate the factors, the cases would express that the officers need to have articulated facts; however, the officers only need articulable facts, taking into account the entire picture. In other words, the officers need not articulate reasons justifying a stop; however, articula-ble facts must be found or determined from the record under the totality of circumstances.
In the present case the officers heard Hamilton say that he was going to get a pistol during a verbal altercation on the street. The officers did not get this information from an anonymous tip. They were present and directly heard Hamilton’s threatening words. The officers had reasonable suspicion that Hamilton intended to engage in unlawful conduct and was about to commit an offense under |sLa. C.Cr .P. Art. 215.1. Pursuant to a valid investigatory stop, the police patted Hamilton down for their safety where he had threatened to get a gun. Deference should be given to the officers’ determination that under the circumstances, the defendant was making a threat that he in *419 tended to carry out. Hamilton’s remark was threatening enough for the officers to call for additional backup police units to follow Hamilton. It would be unreasonable for the police to allow Hamilton to enter the residence where he could have access to a gun, considering that he made the menacing exclamation that he was going to get a pistol during a verbal altercation.
The issue at this point is whether the officers’ decision to knock on the door of the Elysian Fields residence; to inform Hamilton’s wife of the investigation relating to a weapon; to enter the house; and to obtain the wife’s voluntary consent to search, were proper.
Warrantless entries into the home of the accused for arrest or seizure are invalid in the absence of exigent circumstances. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The police need both probable cause (to arrest or to search) and exigent circumstances to justify a nonconsensual warrantless intrusion into private premises. State v. Welch, 449 So.2d 468, 470 (La.1984); State v. Johnson, 98-2544 (La. App. 4 Cir. 11/17/99), 748 So.2d 527. When probable cause exists, police entry into a residence under “exigent circumstances” is permitted as an exception to the warrant requirement. State v. Welch, supra, 449 So.2d at 470. Exigent circumstances include the possibility of the destruction of evidence; the need to prevent the offender’s escape; and the possibility of a violent confrontation which could cause injury to the officers and the public. State v. Johnson, supra, 748 So.2d at 531.
Whether a defendant has a constitutionally protected expectation of privacy 1 (¡involves a two part inquiry: (1) a defendant must first show that he has a reasonable expectation of privacy in the area searched for the items seized; and (2) a defendant must also show that society is prepared to accept the expectation of privacy as objectively reasonable. State v. Ragsdale, 381 So.2d 492, 497 (La.1980); State v. Karston, 588 So.2d 165 (La-App. 4 Cir.1991).
While it is well settled that warrantless searches are per se unreasonable, a warrantless search conducted pursuant to voluntary consent is not unreasonable. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Lyons, 514 So.2d 558 (La.App. 4 Cir.1987), writ denied sub nom. State ex rel. Lyons v. State, 581 So.2d 680 (La.1991). The State bears the burden of proving that the consent has been freely and voluntarily given. State v. Massey, 94-1388 (LaApp. 4 Cir. 4/26/95), 653 So.2d 1372. The voluntariness of consent is a question of fact to be determined by the district court under the facts and circumstances of each case, and its determination is entitled to great weight on review. State v. Ossey, 446 So.2d 280 (La.1984), cert, denied, sub nom. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Irby, 93-2265, p. 5 (LaApp. 4 Cir. 1/13/94), 632 So.2d 798. See also State v. Shapiro, 98-1949 (La. App. 4 Cir. 12/29/99), 751 So.2d 337. The voluntary consent to search must be proved by a preponderance of the evidence. U.S. v. Riley, 968 F.2d 422 (5 Cir. (La.) 1992), cert, denied, 506 U.S. 990, 113 S.Ct. 507, 121 L.Ed.2d 442; State v. Frier-son, 302 So.2d 605 (La.1974), writ denied sub nom. State ex rel. Frierson v. Phelps, 330 So.2d 310 (La.1976).
In the present case, the police stopped Hamilton outside in front of the residence on Elysian Fields. After stopping Hamilton and finding nothing on his |inperson, the police were justified in their decision to knock on the door of the residence and tell Hamilton’s wife that he was under investigation for possession of a weapon because the police directly heard Hamilton say that he was going to get a gun. The officers were trying to avoid a violent confrontation and to protect the public under exigent circumstances.
*420 The trial court focused on the fact that the gun and cocaine were found inside the residence, and the defendant was stopped outside. Therefore, the trial court found there was no probable cause to arrest Hamilton when he was stopped and searched. The trial court stated that the police did not search Hamilton’s house, noting that Hamilton “already told them he lived in the St. Bernard Project.” The trial court did not determine that Hamilton had an expectation of privacy in the wife’s residence or that the wife could voluntarily consent to a search, which would bfe legal without a search warrant.
In State v. Irby, supra, the officers’ limited detention of the resident was justified by the officers’ reasonable suspicion based on a tip and observations that narcotics activities were connected to the apartment. The defendant told the officers that he lived at another residence with his mother. The defendant’s cousin was the apartment’s resident, and she gave her voluntary consent to search the apartment. The cousin signed a consent to search form. The defendant argued that the detention of the cousin was an arrest, for which the officers did not have probable cause. This court found that the conduct did not amount to an arrest but merely a limited detention while the officers obtained a warrant.
In State v. Rose, 607 So.2d 974 (La.App. 4 Cir.1992), writ denied, 612 So.2d 97 (La. 1993), the State introduced the consent to search form signed by the defendant. The detective stated that the defendant was advised of his rights before Inhe signed the form and said he wanted to consent to the search. No evidence was offered by the defense that the defendant did not freely and voluntarily consent to search.
If it is determined that the accused had no reasonable expectation of privacy in the area invaded, neither a warrant nor an exception to the warrant requirement is needed for the seized evidence to be admissible. State v. Paulson, 98-1854 (La.App. 1 Cir. 5/18/99), 740 So.2d 698. A search conducted pursuant to consent is an exception to the requirements of both a warrant and probable cause. State v. Johnson, 98-0264 (La.App. 1 Cir. 12/28/98), 728 So.2d 885.
In the present case, the investigatory stop and safety pat-down search of Hamilton were legal. It was proper for the police to detain Hamilton to keep him from entering the residence where he might have access to a gun since he said he was going to get his pistol during the verbal altercation outside the bar. Hamilton’s wife stated that sometimes Hamilton lived there. Hamilton’s wife properly and voluntarily consented to the search of her residence without infringing on Hamilton’s expectation of privacy. She stated that she had a young child and did not want to have guns in the house. When asked if he explained to her that she had the option of refusing to consent to the search, Officer Greenup replied, “Yes, ma’am, definitely.” Hamilton’s wife freely gave her consent to search. She signed the consent to search form, and her consent was not coerced under the circumstances.
The trial court stressed that there was no probable cause to arrest Hamilton outside of the residence. However, the wife’s voluntary consent legally allowed the officers to make the warrantless search of the residence without probable cause. The police were justified in detaining Hamilton from going inside and having 112access to a weapon where he had threatened to get his pistol. Although Hamilton was standing outside, and even if there were no probable- cause to search the residence, the wife’s voluntary consent to the search of the residence is an exception to the requirements of both a warrant and probable cause. The contraband and weapon were properly seized pursuant to the wife’s voluntary consent to search. When the police first found the contraband and brought it outside, Hamilton acknowledged it was his, and that he had to take care of his family. Hamilton’s statements are admissible as *421 the police previously read him his Miranda rights before the officers went inside the residence. At the time that Hamilton made the statements, the police had probable cause to arrest Hamilton because they found the contraband pursuant to the wife’s voluntary consent to search. The subsequent search and retrieval of the weapon were valid.
Accordingly, the ruling of the trial court is reversed, and the defendant’s motion to suppress is denied. The case is remanded for further proceedings.

WRIT GRANTED: REVERSED & REMANDED.

McKAY, J„ DISSENTS WITH REASONS.