JACHARLES R. JONES, Judge.
The Defendant, Tyrone Dupleche, appeals his conviction and sentence for possession of heroin. Following a review of the record, we affirm.
Dupleche was indicted by the Orleans Parish grand jury on March 3, 1999, for possession with the intent to distribute heroin, a violation of La. R.S. 40:966(A)(1). At his arraignment, he was appointed counsel and entered a plea of not guilty. However, Dupleche subsequently retained another attorney who filed discovery motions.
Following an evidentiary hearing, the district court denied Dupleche’s Motion to Suppress Evidence. Dupleche was tried by a twelve-member jury, which found him guilty of possession of heroin, a lesser responsive verdict. On November 17, 2001, the State filed a multiple bill charging him as a second felony offender.
When Dupleche appeared for sentencing, he entered a plea of guilty as charged to the multiple bill, waived all legal delays and the district court sentenced him to serve five years at hard labor without benefit of probation or suspension of sentence, with credit for time served. This timely appeal follows.
|?On January 7, 1999 at 5:00 p.m., Officers Travis McCabe, Michael Crawford and Warren Keller, who are members of the New Orleans Police Department (hereinafter “NOPD”) Special Operations Division, Tactical Unit, were on proactive patrol in a marked police unit, when they stopped for traffic at the intersection of A.P. “Touro”[1] and Tonti Streets. While stopped at the intersection, Officers McCabe and Crawford noticed two individuals, later identified as Tyrone Dupleche and Wallace Smith, standing on the side of the street by an older model General Motors vehicle. The events occurring after this moment are in serious dispute by the parties.
According to Dupleche, he was on A.P. Touro Street because he was dropping off Smith at Smith’s grandmother’s residence, located at 2301/6 A.P. Touro Street. Upon arriving, Dupleche stood outside for approximately five minutes talking to Smith and a man named Lewis Charles. Charles lived in the same building as Smith’s grandmother.
*1020 As Smith and Charles began to walk toward the residence, Dupleche contends that he saw a police patrol car at the intersection, and as both men were entering the residence, three NOPD officers jumped out of their patrol car. Subsequently, one officer grabbed him as he was near the building entrance at the time, while the other officers pursued Charles and Smith into the hallway of the building. Later, Smith was brought out of the building in handcuffs.
Dupleche contends the police officers questioned him about certain people selling drugs in the neighborhood. After Du-pleche responded that he did not know the people they were inquiring about, he was handcuffed, patted down and placed |3m the back of the police car. The police then began searching the area and later questioned Smith. Smith was released after the interrogation
Dupleche further argues that the officers transported him to the police station near City Park and the Bayou. There the officers told him that he would be released if he consented to help them conduct a drug buy. He refused their request, and Officer Keller told the other two officers that Dupleche should be released since no contraband was found on him.[2] Dupleche reports that the other two officers insisted that he be taken to Central Lockup for refusing to help with the drug buy.
Officers McCabe and Crawford testified to a different version of the events leading to the arrest of Dupleche. The officers testified that upon arriving at the intersection of A.P. Touro and Tonti Streets, they saw Dupleche standing on the curb and leaning into an old gray Oldsmobile through the opened driver’s door. The car was parked on the wrong side of the street. Smith was leaning against the rear of the car on the driver’s side. Officer McCabe initiated the investigation because he perceived that Dupleche was tampering with the steering column of the Oldsmobile, while Smith was standing as a lookout.
Officer McCabe contends that Smith first noticed the presence of the police officers and that he moved toward Du-pleche as if he were warning him. Officer McCabe became suspicious of Smith and Dupleche because the area they were in was notorious for narcotics trafficking and stolen vehicles. Additionally, Officer McCabe observed Smith walk at a fast pace away from the car toward the residence building, in front of which the Oldsmobile was parked. Officer Crawford j^also contends that Smith walked at a fast pace toward the building. Both officers witnessed Dupleche peer at them over the hood of the Oldsmobile before reaching into the vehicle to grab an unknown object. Officers McCabe and Crawford observed that Dupleche had a clenched fist when he walked away from the vehicle, but neither saw an object in Dupleche’s hand.
Further, the officers witnessed Dupleche walking into the building behind Smith. The three officers could not tell whether the Oldsmobile was being burglarized or stolen, so they decided to investigate. Officer McCabe testified that they agreed to go in and detain Smith and Dupleche to ascertain whether they were trying to steal or burglarize the car. After making their decision to stop, the officers parked their car at the rear of the Oldsmobile before exiting and walking to the entrance of the building.
Since the building was open for public entry, the officers entered the hallway of the building. Dupleche and Smith proceeded up the stairwell to the apartment of *1021 one of the residents, who was later identified as Lewis Charles, where Smith began banging on the door. Officer McCabe was familiar with this apartment building because he had previously executed an arrest warrant for Charles at this location. .
Upon arriving upstairs, Officer Crawford ordered the men to show their hands as Officer McCabe held his flashlight on them. As Dupleche turned to face the officers to put his hands up, he dropped an object on the steps. Officer McCabe then grabbed and handcuffed Dupleche as Officer Crawford retrieved the object. Officer Keller handcuffed Smith. The object was a plastic bag containing 60 small foils of a substance they believed to be heroin— having a value of about ten to twenty dollars per foil. The Crime Lab of the police department later confirmed that the bag contained heroin, but did not check the bag for fingerprints.
|5Officer McCabe testified that Dupleche was arrested and advised of his rights. Twenty-six dollars was recovered from Du-pleche after he was searched. Officer McCabe, when patting down Smith, felt that he had a large sum of money on him, but did not count it since he was not being arrested.
After Dupleche was arrested, he was placed into the patrol car. Charles and his mother came downstairs to talk to the officers outside the building; however, they were advised to return to their apartment and not to interfere with the investigation. Afterwards, Dupleche was taken to the Tactical Unit Office in the Special Operations Division building on Bayou St. John where, Officer McCabe testified that Dupleche was asked to become a confidential informant, a person who arranges to buy from a drug dealer. Dupleche refused to cooperate. Officer Crawford testified that he did not recall that an offer was made to have Dupleche become a confidential informant. The officers further testified that they later learned that the Oldsmobile was not stolen.
The record reveals that there are no errors patent.
In his sole assignment of error, Du-pleche argues that the district court erred in denying his Motion to Suppress Evidence. He specifically argues that the evidence gathered was the product of an unwarranted stop.
The case of State v. Hamilton, 2000-1176, p. 5-6 (La.App. 4 Cir. 9/13/00), 770 So.2d 413, 417-418, establishes the standard of review for a Motion to Suppress Evidence:
On mixed questions of law and fact, the .appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo. United States v. O’Keefe, 128 F.3d 885 (5 Cir.1997), cert. denied, 523 U.S. 1078, 118 S.Ct. 1525, 140 L.Ed.2d 676 (1998).
Lin this case, Dupleche is challenging the district court’s conclusions drawn from the facts. Therefore, we shall review this ease de novo. Furthermore, this Court may consider any pertinent evidence given at trial in reviewing a trial court’s ruling on a motion to suppress. State v. Washington, 2000-1055, p. 10 (La.App. 4 Cir. 7/18/01), 793 So.2d 376, 383, quoting, State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
Having established the standard of review, this Court must examine which party carries the burden of proof. La.C.Cr.P. art. 703(D) provides that:
On a trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported *1022 confession or statement by the defendant or any evidence seized without a warrant.
Therefore, the responsibility to prove that evidence is admissible when it has been seized without a warrant lies with the State in a trial on a motion to suppress.
Dupleche argues that the State did not and cannot carry its burden of proof, because the officers did not have a sufficient level of suspicion to detain him for the initial stop, which led to his arrest for drug possession. Dupleche is making a fruit of the poisonous tree argument. State v. Fortier, 99-0244, p. 4 (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 458. Dupleche bases his argument upon the fact that the officers did not observe him behaving suspiciously to warrant an initial investigatory stop; thus, the evidence resulting from that stop should have been suppressed at his criminal trial as it was the product of an unjustified stop. He further argues that the officers lacked the requisite level of suspicion to apprehend him, because the officers only observed him leaning into a car and retrieving an object.
|7Pupleche properly sets forth the requirements for reasonable suspicion applicable before this Court, citing State v. Phillips, 2000-0279, p. 3-4 (La.App. 4 Cir. 10/4/00), 774 So.2d 989, 991, writ denied, 2000-3048 (La.10/12/01, 799 So.2d 494), which states that:
A police officer has the right to detain briefly and interrogate a person when the officer has a reasonable articulable suspicion that the person is, has been, or is about to be engaged in criminal conduct. La. C. Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Tucker, 626 So.2d 707 (La.1993). “Reasonable suspicion” is something less than probable cause, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of an individual’s right to be free from governmental interference. State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268. Mere suspicious activity is not a sufficient basis for police interference with an individual’s freedom. State v. Williams, 421 So.2d 874 (La.1982). However, the level of suspicion need not rise to the probable cause needed for a lawful arrest. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. [State v.] Belton [441 So.2d 1195, (La.1983) ]. An investigative stop must be justified by some objective manifestation that the person to be stopped is or is about to be engaged in criminal activity, or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct. State v. Moreno, 619 So.2d 62 (La.1993). [Emphasis added]
Also, the detaining officers must have knowledge of specific, articulable facts, which if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Hall, 99-2887, p. 4 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 57, citing, State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer’s past experience, training, and common sense may be considered in determining if his ^inferences from the facts at hand were reasonable; the experience of the officers present at the time of the incident is entitled to deference. Id. Considering the ease law and the facts of this case, the State met its burden of proof.
The record indicates that several factors contributed to the officers establishing a *1023 reasonable suspicion to stop Dupleche. Firstly, the area in which Dupleche was located at the time of the stop is a high crime area notorious for car theft. Secondly, Smith was standing in a lookout position adjacent to Dupleche as he leaned into the car around the steering column of the Oldsmobile. Thirdly, the type of car Dupleche was leaning into is a model that is commonly and easily stolen. Fourthly, upon being notified by Smith that the police were watching them, Dupleche peered at the police and quickly reached into the car. Lastly, Smith and Dupleche quickly retreated into the residence building. Under the totality of the circumstances, these combined occurrences could have led a prudent police officer to derive reasonable suspicion.
 The officers had reasonable suspicion to detain Dupleche long enough to confirm or abate their suspicions. Their suspicions were elevated to the level of probable cause for arrest for drug possession when Dupleche dropped his bag of heroin. The basis for the stop in this case was valid; consequently, the evidence encountered as a result of the stop was properly introduced into evidence.
DECREE
For the foregoing reasons, the conviction and sentence of Tyrone Dupleche are hereby affirmed.

AFFIRMED.

. The correct spelling of this street is A.P. Tureaud. A.P. Touro is used throughout this opinion as to remain consistent with the record.

. Officer Keller did not testify at trial.